UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

SWORDPEN.COM, INC.                    :
                                       :        07 Civ. 10955 (KMK)
                    Plaintiff,         :
                                       :
          - against -                  :
                                       :
HENRY HOLT AND COMPANY, LLC,           :
KAREN J. KATZ, and JOHN and/or JANE    :
DOES 1-10,                             :
                                       :
                                       :
                    Defendants.        :
                                       :
------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**Robert D. Balin**
**Christopher J. Robinson**
**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York  10019-6708**
**(212) 489-8230**

*Attorneys for Defendants*
*Henry Holt and Company, LLC and Karen Katz*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    The Katz Book .................................................................................................... 3

    B.    Lewinson's Registered Manuscript ..................................................................... 4

    C.    Lewinson's Unregistered Derivative Work ......................................................... 5

    D.    The Genre of Illustrated Books Depicting Children From Around the World ........... 5

    E.    Plaintiff's Infringement Action ........................................................................... 6

ARGUMENT ........................................................................................................................ 7

    THERE IS NO SUBSTANTIAL SIMILARITY BETWEEN THE KATZ BOOK AND
    LEWINSON'S REGISTERED MANUSCRIPT ................................................................. 7

    A.    Material That Appears Only in Lewinson's Unregistered Derivative Work May
        Not Be Considered ............................................................................................. 7

    B.    Copyright Infringement Requires Substantial Similarity of Protectible
        Expression and Cannot Be Premised on Ideas or Stock Elements ......................... 9

    C.    Lewinson is Unable to Show That the Defendants Have Appropriated His
        Protected Expression ......................................................................................... 15

        1.    Characters and Settings ........................................................................... 15

        2.    Plot; Pace; Sequence .............................................................................. 19

        3.    Themes ................................................................................................... 21

        4.    Total Concept and Feel ........................................................................... 22

CONCLUSION ..................................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Adsani v. Miller*, 1996 U.S. Dist. LEXIS 5310 (S.D.N.Y. Apr. 19, 1996)...................15

*Alexander v. Haley*, 460 F. Supp. 40 (S.D.N.Y. 1978)....................19

*Apollo Theater Foundation, Inc. v. Western International Syndication*,
     2005 U.S. Dist. LEXIS 7955 (S.D.N.Y. May 5, 2005)....................14

*Arden v. Columbia Pictures Industrial, Inc.*,
     908 F. Supp. 1248 (S.D.N.Y. 1995).................................... *passim.*

*Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946)....................14

*BMG Music v. Pena*, 2007 WL 2089367 (E.D.N.Y. 2007)..............7

*Bell v. Blaze Magazine*, 2001 U.S. Dist. LEXIS 2783
     (S.D.N.Y. March 16, 2001)....................10, 11, 12

*Boyle v. Stephens, Inc.*, 1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. Feb. 25, 1998),
     *aff'd*, 2001 U.S. App. LEXIS 23196 (2d Cir. Dec. 26, 2001)....................10, 11

*CBS Broadcasting Inc. v. ABC, Inc.*,
     2003 U.S. Dist. LEXIS 20258 (S.D.N.Y. Jan. 13, 2003)....................23

*CK Co. v. Burger King Corp.*, 1994 U.S. Dist. LEXIS 13934
     (S.D.N.Y. Sept. 3, 1994), *rehearing denied*
     1995 U.S. Dist. LEXIS 823 (S.D.N.Y. Jan. 26, 1995)...................*passim.*

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002)....................11, 13

*Debitetto v. Alpha Books*, 7 F. Supp.2d 330 (S.D.N.Y. 1998)....................11, 23

*Duffy v. Penguin Books USA Inc.*, 4 F. Supp.2d 268 (S.D.N.Y. 1998) ....................13

*Feist Publ'ns, Inc. v. Rural Telegraph Service Co.*, 499 U.S. 340 (1991)....................12

*Gund, Inc. v. Smile International, Inc.*, 691 F. Supp. 612 (S.D.N.Y. 1978),12
     *aff'd mem*, 872 F.2d 1021 (2d Cir. 1989)....................12

*Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980),
     *cert denied* 449 U.S. 841 (1980)....................11, 12, 18

*Kregos v. Associated Press*, 3 F.3d 656 (2d Cir. 1993),
     *cert. denied*, 51 U.S. 1112 (1994)....................10

**Cases (cont'd)**

**Page(s)**

*In re Literary Works in Electronic Databases Copyright Litigation*,
   509 F.3d 116 (2d Cir. 2007)...................................................................8

*Madrid v. Chronicle Books*, 209 F. Supp.2d 1227 (D. Wy 2002) .....................13, 15, 21

*Mallery v. NBC Universal*, 2007 U.S. Dist. LEXIS 88960
   (S.D.N.Y. Dec. 3, 2007)......................................................................11

*Nelson v. Grisham*, 942 F. Supp. 649 (D.D.C. 1997), *aff'd*
   132 F.3d 1481 (D.C. Cir. 1997).............................................................10

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930) ........................15

*Novak v. NBC Inc.*, 716 F. Supp. 745 (S.D.N.Y. 1989)...................................9

*O'Neill v. Dell Publishing Co.*, 630 F.2d 685 (1st Cir. 1980)............................10

*Reyher v. Children's Television Workshop*, 533 F.2d 87 (2d Cir. 1976) ...........12, 13, 15, 21, 22

*Robinson v. Viacom International, Inc.*, 1995 U.S. Dist. LEXIS 9781
   (S.D.N.Y. July 13, 1995) ..............................................................16, 18, 19

*Walker v. Time Life Films, Inc.*, 615 F. Supp. 430 (S.D.N.Y. 1985),
   *aff'd*, 784 F.2d 44 (2d Cir. 1986), *cert. denied*,
   476 U.S. 1159 (1986)......................................................................*passim.*

*Warner Brothers Inc. v. American Broadcasting Cos., Inc.*,
   720 F.2d 231 (2d Cir. 1983)..............................................................15

*Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989).................................8

*Well-Made Toy Manufacturing Corp. v. Goffa International Corp.*,
   210 F. Supp.2d 147 (E.D.N.Y. 2002), *aff'd*
   354 F.3d 112 (2d Cir. 2003)......................................................7, 8, 9, 12

*Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996) ...................................*passim.*

**Statutes and Rules**

**Page(s)**

*4 Nimmer on Copyright*, § 13.03[E][2] at 13-84 (2007)..................................11

17 U.S.C. § 101............................................................................8

## Statutes and Rules (Cont'd)

**Page(s)**

17 U.S.C.§102(b) ...............................................................................................11

17 U.S.C. § 411(a) ..............................................................................................7

Federal Rule of Civil Procedure 12(b)(6) .........................................................1

Federal Rule of Civil Procedure 56 ...............................................................1, 24

Defendants Henry Holt and Company, LLC ("Holt") and Karen Katz respectfully move to dismiss the Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.

## PRELIMINARY STATEMENT

This copyright infringement action arises from a children's book, entitled *Can You Say Peace?* (the "Katz Book"), that was written and illustrated by veteran children's author Karen Katz ("Katz") and published by Holt in 2006. The focus of the 32-page Katz Book is the UN's International Day of Peace and – using Katz's richly distinctive color illustrations – the book depicts children from around the world saying "peace" in their native language. Acting under the name of his copyright assignee – plaintiff SwordPen.com – Zev Lewinson ("Lewinson") alleges that the Katz Book infringes his copyright in an unpublished and un-illustrated manuscript, entitled *What Do You Call It?*, which Lewinson registered with Copyright Office in 1999 (the "Manuscript"). Lewinson's Manuscript is a short written outline in which toddlers from different countries are described as being soothed by pacifiers, with the word "pacifier" quoted in their mother tongue. Lewinson's contention that the Katz Book infringes his Manuscript fails to state a claim as a matter of law and fundamentally misperceives the scope of copyright protection.

It is well-settled that an actionable copyright claim is not stated unless there is "substantial similarity" of protectible expression in the two works at issue – a threshold question that courts in this Circuit regularly determine as a matter of law by comparison of the two works. Here, even a cursory comparison demonstrates that there is no similarity, let alone the required substantial similarity, of protectible expression.

Indeed, Lewinson does not (and cannot) claim copying of *any* expression from his Manuscript. None of the text, phrases, dialogue or characters from the Manuscript appear anywhere in the Katz Book – which is hardly surprising since the Katz Book has nothing to do

with children sucking pacifiers. Instead, Lewinson premises his infringement claim on the theory that Katz copied his "*concept* of a child in a country that says a theme-translated word in the language of that country[.]" (Pre-Motion Letter Brief of Bruce Minsky, Esq., dated February 14, 2008, at 2) (emphasis added). Yet, such a universal concept common to scores of children's books is a quintessential example of a mere "idea", which receives no protection under copyright law (and which is obviously not unique to plaintiff).

Similarly, plaintiff's attempt to cobble together an infringement claim based on nothing more than a few random superficial common elements found in countless books for children fails for two independent reasons. First, most of the few stock elements that Lewinson claims were appropriated do *not* appear in his registered Manuscript, but only in an unregistered derivative work, and thus they may not form the basis of an infringement claim as a matter of law. Equally important, the few generalized similarities of which Lewinson complains (placing a Chinese child near the Yangtze river or kids standing on a globe) constitute patently cliché stock elements common to the genre – which the Second Circuit has repeatedly held are unprotectible under copyright law. Stripped of these unprotectible elements (as the law requires), the Katz Book about peace and Lewinson's Manuscript about pacifiers are wholly dissimilar in their characters, pace, theme and arrangement, as well as in their total concept and feel.

In short, plaintiff's claim cannot survive the substantial similarity test for copyright infringement and should be dismissed.

## STATEMENT OF FACTS

Under settled law, the question of whether there exists substantial similarity of protectible expression is assessed by the court through a "detailed examination of the works themselves." *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1259 (S.D.N.Y. 1995) (*quoting Walker v. Time Life Films, Inc.*, 784 F.2d 44, 49 (2d Cir.), *cert. denied*, 476 U.S. 1159 (1986)).

A.      **The Katz Book**[1]

*Can You Say Peace?* was written and illustrated by Katz and published by Holt in 2006. (Balin Aff., Ex. B). The thirty-two page book celebrates September 21, designated the International Day of Peace by the United Nations. The opening pages introduce Peace Day and the concept that, although children everywhere hope for peace, "there will be many different ways to say peace." (*Id.*) On the following sets of page spreads, Katz introduces eleven individual children from different countries. On the left-hand page of each spread, a full-page illustration depicts a busy scene from the child's daily life. The child and his or her country of origin are named. For example, Meena from India is shown surrounded by her family at a picnic with an elephant and sacred cow in the field beyond the palm trees. On each opposite, right-hand page of the spread, the same child is shown in portrait format and the word for "peace" is stated in his or her native language, both in anglicized spelling and phonetic equivalent.

The illustrations in the Katz Book are brightly colored and combine a folk-art sensibility with textures and patterns drawn from each nation's artistic traditions. For example, Sadiki from Ghana is dressed in a shirt of traditional, swirling-motif fabric. The children depicted in the Katz Book are (in order) from India, America, Japan, Australia, Mexico, Iran, Russia, China, France, Ghana, and Bolivia. The individual children are followed by two pages of illustrated vignettes on the theme that all around the world children want the same opportunity to go to school, walk safely, play outside and share a family meal. The next page spread contains a "roll call" showing all the children grouped together uttering their own words for peace. The final page of the book explains the concept behind the International Day of Peace, and includes a list of other countries around the world, their word for peace, and a guide to pronunciation. That page is

---

[1]    A copy of the Katz Book is annexed to the moving Affidavit of Robert D. Balin, sworn to May 5, 2008 ("Balin Aff."), as Exhibit B.

illustrated with a map of the world, depicting children who stand on or near their native country while a dove with an olive branch flies overhead.

Katz's book, for all its color and whimsy, carries a serious message:  Children in their innocence, whatever their color, nationality or culture, are united in their desire for peace.  The Katz Book reminds readers – children and adults alike – that on Peace Day "people everywhere can find their own way to celebrate peace."  (Balin Aff., Ex. B).

## B.    Lewinson's Registered Manuscript

Lewinson's work, *What Do You Call It?*, is an unpublished manuscript which he registered with the Copyright Office on December 2, 1999.  (Balin Aff., Ex. C).[2]

The registered Manuscript totals four pages plus a title page and describes a fourteen-page children's book.  Each of the proposed pages 1 through 13 describes a toddler from a different country who is sucking on a pacifier – the "It" of the Manuscript's title.  The children in the Manuscript are (in order) from Mexico, "Hungry" [sic], the United States of America, "Sweeden" [sic], Germany, Israel, the Congo, Australia, Ireland, Russia, Japan, Saudi Arabia and China.  (Balin Aff., Ex. C).  The text describing each child contains the phonetic equivalent for the word "pacifier" in the toddler's native language.  For example, "In Sweeden [sic], Niels sucks his 'Naap', while taking his nap."  (Balin Aff., Ex. C at 1).  In a few cases, Lewinson gives some additional context – for example, we are told that Mohamed from Saudi Arabia is dreaming during rest time in his nursery school and that Caitlin's Irish mother is reading her bedtime stories.  Although the Manuscript includes no illustrations, the text on each page is accompanied by a short written suggestion in parentheses for a proposed image.  For example, the Manuscript proposes that Maria from Mexico be accompanied by an illustration of "a little girl sucking a

---

[2]    A true copy of Lewinson's registered Manuscript, certified by the Copyright Office, is annexed as Ex. C to the Balin Affidavit.

pacifier while she wears a colorful sombrero," Simone from Germany is "playing with her dolls," and Ivan from Russia is "dressed like a kossak on a horse." The final page of the Manuscript describes an idea for an illustration of a globe on which the children gather, dressed in their national costumes and sucking on their pacifiers. The earth is encircled by a banner of national flags, pulled by a dove. The Manuscript terminates with the joke "Paci On Earth."

Lewinson's Manuscript is intended to be humorous. The toddlers of the world, whether surrounded by their toys in the United States or situated in the villages of the Congo, are united in their love for their pacifier. For example, Niles in Sweden dreams of pacifier-sucking sheep, "Irit, who lives in Israel, can't wait to get home from day care to pop 'moe-tzaytz' into her mouth," and Simone from Germany "loves her 'schnuller' almost as much as she loves her dolls." (Balin Aff. Ex. C). A universal object of comfort, the pacifier goes by many names and nicknames (including "paci", "dummy" and "soother").

## C.    Lewinson's Unregistered Derivative Work

In his pre-motion letter brief, Lewinson's counsel annexed a copy of an amended and greatly enlarged version of the Manuscript, which Lewinson has *not* registered with the Copyright Office (the "Unregistered Derivative Work"). (*See*, Balin Aff., Ex. D). As discussed below, as a matter of settled law, Lewinson is precluded from basing his copyright claim on any new material in the Unregistered Derivative Work.

## D.    The Genre of Illustrated Books Depicting Children From Around the World[3]

Not surprisingly, illustrated books depicting children from countries around the world are

---

[3]    For purposes of its substantial similarity analysis, the court may take judicial notice of common elements in other published works. *See, e.g., Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 438 (S.D.N.Y. 1985) (taking judicial notice that "members of the New York Police Department are often portrayed as Irish, smokers, drinkers and third or fourth generation police officers"), *aff'd*, 784 F.2d at 50 (Footchases..., not to mention the familiar figure of the Irish cop, are venerable and often-recurring themes of police fiction").

a standard genre of children's literature – hardly unique to either Lewinson or Katz. From *Children Around the World* to *Wake Up World: A Day in the Life of Children Around the World*, numerous books depict children from different countries, dressed in their native garb, engaged in play, meals and other activities. (*See* Balin Aff., Exs. E, G, I, M). Many children's books, such as *Can You Greet the Whole Wide World*, depict children from different countries uttering "a theme-translated word in the language of that country." (Plaintiff's Pre-Motion Letter Br. at 2). (*See* Balin Aff, Exs. H, K, M). Countless children's books and other works contain the cliché illustration of children from around the world standing on a globe or a map – with or without a dove. (*See* Balin Aff., Exs. F, H, I, J, L, O, P).

**E.    Plaintiff's Infringement Action**

In its Complaint, plaintiff Swordpen.com (as Lewinson's copyright assignee) alleges a single copyright infringement claim broken into three requests for relief – the First Cause of Action for injunctive relief, the Second for an accounting and the Third for damages. (Balin Aff., Ex. A, ¶¶ 39, 43, 46) The Complaint does not allege that the Katz Book copies any expression from Lewinson's Manuscript or in any manner specify how the two works are substantially similar. In his pre-motion letter brief, however, plaintiff's counsel argues that the two works have a "cursory" similarity because both involve "the concept of a child in a country that says a theme-translated word in the language of that country and has a graphic corresponding illustration relating to the country and/or its culture." (Balin Aff., Ex. D at 2 ¶ (a)). Plaintiff's counsel further argues that the Katz Book and the registered Manuscript are similar because each has an illustration (or, in Lewinson's case, the idea for an illustration) of children from around the world standing on a globe, and each depicts a Chinese child near the

Yangtze river.  (*Id.* at 2 ¶ (c)(i) and (ii) and (f)).[4]

## ARGUMENT

## THERE IS NO SUBSTANTIAL SIMILARITY BETWEEN THE KATZ BOOK AND LEWINSON'S REGISTERED MANUSCRIPT

This motion turns on a single issue:  the presence or absence of substantial similarity between Katz's Book and Lewinson's registered Manuscript.  Application of well-settled Second Circuit law demonstrates that Lewinson's claim rests on abstract ideas, stock elements common to children's books, and *scenes a faire* – elements that are not protected by copyright – and that neither the fundamental essence of the two works (their "total concept and feel"), nor their particular expression in details, scenes, events, characters or arrangement are remotely similar.

**A.    Material That Appears Only in Lewinson's Unregistered Derivative Work May Not Be Considered**

As a threshold matter, Lewinson is jurisdictionally barred from basing his copyright claim on any material that appears only in his Unregistered Derivative Work.

It is well-settled that "[r]egistration of a copyright is a jurisdictional prerequisite to bringing a copyright infringement suit in federal court."  *BMG Music v. Pena*, 2007 WL 2089367 at *2 (E.D.N.Y. July 19, 2007).  *See also Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 115 (2d Cir. 2003) ("[t]his registration requirement is jurisdictional"); 17 U.S.C. § 411(a).  Here, for purposes of this motion, defendants do not dispute that Lewinson registered his original Manuscript with the Copyright Office in 1999.  However, in his attorney's pre-motion letter to the Court, Lewinson bases most of his allegations of copyright infringement

---

[4]    In his pre-motion letter, plaintiff's counsel also avers four "cursory" alleged similarities between the Katz Book and abstract elements contained *only* in the Unregistered Derivative Work, but not in the registered Manuscript.  *See* Balin Aff., Ex. D at 2-3, ¶¶ (c)(ii) (playing hide and seek); (c)(iii) (snow as a backdrop for children in Russia); (c)(iv) (bicycles in an illustration of Japanese children); and (d) (a roll call page of children).  As discussed below, since these elements are *not* contained in Lewinson's registered Manuscript, they may not be considered in this Court's substantial similarity analysis.

on a later and greatly enlarged version of the Manuscript that adds extensive *new* material and that Lewinson has *not* copyrighted. (*See* Balin Aff., Ex. D at 1 and Ex. C thereto).

Thus, the Unregistered Derivative Work adds an entirely new page (claimed to be infringed) proposing an illustration of a "crowd of 'kids faces' from all over the world," and adds significant new details to the text and suggested illustrations on other pages – material found nowhere in the registered Manuscript. For example, in his Unregistered Derivative Work, Lewinson adds that his Russian character "Ivan enjoys his pacifier even while playing in the 'snieg' (snow)" (an allegedly infringed detail – snow – found nowhere in the registered Manuscript). Similarly, in his Unregistered Derivative Work, Lewinson adds that his child character from Sweden "dreams that he is playing 'Kurah yomma' (hide and seek) with his friends," which Lewinson claims Katz infringed by illustrating children from Australia playing this common game. In all, the Unregistered Derivative Work contains **662 words**, compared to the registered Manuscript which is **422 words** long, an increase of approximately **64%**.[5]

Because theses changes constitute significantly more than trivial, *de minimis* edits, Lewinson's enlarged Manuscript is clearly an unregistered derivative work. 17 U.S.C. § 101 ("editorial revisions, annotations, elaborations, or other modifications" constitute a "derivative work"); *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir.) *cert denied*, 493 U.S. 883 (1989) (derivative work exists where author contributes "something more than a merely trivial variation.")

The Second Circuit has made clear that "registration of a [copyright] on an original work does *not* create subject matter jurisdiction with respect ... of the original's unregistered derivative." *Well-Made Toy Mfg.*, 354 F.3d at 115 (emphasis added); *In re Literary Works in*

---

[5]    Because the Unregistered Derivative Work also deletes some text contained in the registered Manuscript, the difference between the two is in fact even greater.

*Electronic Databases Copyright Litigation*, 509 F.3d 116, 123 (2d Cir. 2007) ("the existence of a claim based on a registered copyright does not bring within a district court's jurisdiction … claims stemming from unregistered copyrights"). Accordingly where, as here, "the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element in the registered preexisting work, but *not* as to any element original to the unregistered derivative work." *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp.2d 147, 158 (E.D.N.Y. 2002) (emphasis added).

In short, plaintiff is jurisdictionally barred from attempting to base his infringement claim on any new material in his Unregistered Derivative Work. Instead, under settled precedent, this Court's substantial similarity analysis must be based solely on a comparison of the Katz Book and Lewinson's registered Manuscript. *See, e.g., Well-Made Toy*, 354 F.3d at 115 (affirming that, in conducting substantial similarity analysis, district court was required to disregard all changes to copyrighted doll made in later unregistered derivative version); *Novak v. NBC Inc.*, 716 F. Supp. 745, 750 (S.D.N.Y. 1989) (holding that without registration of taped performances, "claims about elements relating solely to the performances, as opposed to the [copyrighted] scripts, are not an element of infringement"); *Walker*, 615 F. Supp. at 438 ("courts have routinely rejected requests to consider earlier [unregistered] drafts … in determining substantial similarity").[6]

## B.     Copyright Infringement Requires Substantial Similarity of Protectible Expression and Cannot Be Premised on Ideas or Stock Elements

Plaintiff's infringement claim does not survive substantial similarity analysis. To establish actionable copying, a copyright holder must demonstrate *both* "(a) that the defendant

---

[6]    Although the Unregistered Derivative Work is irrelevant to the issue of substantial similarity, that version is likewise not substantially similar to the Katz Book, as set forth below.

had access to the copyrighted work and (b) the substantially similarity of protectible materials in the two works." *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993), *cert. denied*, 51 U.S. 1112 (1994). As is standard on substantial similarity motions, defendants will concede access to the registered Manuscript for purposes of this motion only.[7] Thus, the sole question before this Court is whether the two works are substantially similar.

"It is well-established that a court may determine the absence of substantial similarity as a matter of law." *Boyle v. Stephens, Inc.*, 1998 U.S. Dist. LEXIS 1968 at *9 (S.D.N.Y. Feb. 25, 1998), *aff'd*, 2001 U.S. App. LEXIS 23196 (2d Cir. Dec. 26, 2001); *see also Bell v. Blaze Magazine*, 2001 U.S. Dist. LEXIS 2783 at *8-9 (S.D.N.Y. March 16, 2001) (same). Dismissal is appropriate where the court concludes that the alleged similarity "'concerns only noncopyrightable elements of plaintiff's work,' or 'no reasonable trier of fact could find the works substantially similar.'" *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (*quoting Walker*, 784 F.2d at 481). Discovery is not necessary to make this determination. Instead, "[i]n any case involving substantial similarity, the actual texts [of the works in suit] are the relevant evidence." *Nelson v. Grisham*, 942 F. Supp. 649, 652 (D.D.C. 1997), *aff'd* 132 F.3d 1481 (D.C. Cir. 1997). *See also Walker*, 784 F.2d at 51 ("the works themselves … are the real test" for substantial similarity); *O'Neill v. Dell Publishing Co.*, 630 F.2d 685, 690 (1st Cir. 1980) (no discovery necessary since "[i]t is difficult to understand how additional evidence, whatever it

---

[7]    Defendants in fact vigorously deny that they had access to the Manuscript or any version of it. Nonetheless, as is standard practice on motions to dismiss based on no substantial similarity, defendants will assume access for purpose of their dismissal motion only. *See, e.g., Walker*, 784 F.2d at 48 ("[i]n moving for summary judgment, defendants concede access to Walker's manuscript, thus narrowing the issues to the similarity between the works"); *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1258 (S.D.N.Y. 1995) ("[f]or purposes of this motion defendants concede access to plaintiff's Novel …. Thus, the issue presented by this summary judgment motion is whether substantial similarities exist between the Novel and the Film with respect to elements protected under the copyright law.").

might be, could change the written words of the two [works]"). Accordingly, courts in this Circuit routinely dismiss copyright infringement suits for lack of substantial similarity on pre-discovery dismissal and summary judgment motions.[8]

In exercising its gatekeeper function of analyzing the works at issue, this court is required to first separate out elements which are not protectible under copyright law, and then take into consideration *only* the protectible expression in Lewinson's Manuscript. *Williams*, 84 F.3d at 588 (courts "must take care to inquire only whether 'the protectible elements, standing alone, are substantially similar'") (citation omitted); *see also* 4 *Nimmer on Copyright*, § 13.03[E][2] at 13-84 (2007) ("the comparison should take place after filtering out of the analysis elements of plaintiff's work that are not protectible"). In performing this function of eliminating non-protectible elements, several fundamental principles must be applied.

First, "[i]t is a principle fundamental to copyright law that a copyright does not protect an idea, but only the expression of an idea." *Williams*, 84 F.3d at 587. *See also Walker*, 784 F.2d at 48 ("The copyright protection granted to appellant's book extends only to its particular expression of ideas, not to the ideas themselves."); 17 U.S.C. §102(b) ("In no case does copyright protection . . . extend to an idea"). Thus, Lewinson may *not* claim substantial similarity based on overlapping ideas or concepts in the Katz Book and Manuscript. *Cavalier v. Random House, Inc.*, 297 F. 3d 815, 824 (9th Cir. 2002) ("[G]eneral premise of a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep [are]

---

[8]    *See, e.g.*, *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir.), *cert denied*, 449 U.S. 841 (1980) (dismissal for lack of substantial similarity "permit[s] courts to put 'a swift end to meritless litigation'"); *Boyle*, 1998 U.S. Dist. LEXIS 1968, at *9 (granting motion to dismiss); *Mallery v. NBC Universal,* 2007 U.S. Dist. LEXIS 88960, at *25 (S.D.N.Y. Dec. 3, 2007) (converting 12(b)(6) motion to summary judgment in favor of defendant); *Bell*, 2001 U.S. Dist. LEXIS 2783, at *8-9 (same); *Debitetto v. Alpha Books*, 7 F. Supp.2d 330, 336 (S.D.N.Y. 1998) (same); *CK Co. v. Burger King Corp.*, 1994 U.S. Dist. LEXIS 13934, at *28 (S.D.N.Y. Sept. 3, 1994) (granting pre-discovery motion for summary judgment).

basic plot ideas not protected by copyright law."); *Williams*, 84 F.3d at 589 (shared concept of a dinosaur zoo constituted an "unprotectible idea").

Second, the Second Circuit has repeatedly held that similarity of stock scenes, often termed *scenes a faire*, cannot form the basis of a copyright claim. There is therefore no protection for "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Hoehling*, 618 F.2d at 979; *Walker*, 784 F.2d at 50 (copyright protection does not extend to "stock themes commonly linked to a particular genre"); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976) ("thematic concepts . . . which necessarily must follow from certain plot situations" not protected).

Finally, "elements which are not original are unprotectible." *Well-Made Toy Mfg.*, 210 F. Supp.2d at 161; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) (originality is "the sine qua non of copyright").

Here, the three allegations of "cursory similarity" that plaintiff's counsel makes concerning the Katz Book and the registered Manuscript all relate to unprotectible elements.

Thus, his contention that both works involve "the *concept* of a child . . . that says a theme translated word" with a "corresponding illustration relating to that country and/or its culture" (Balin Aff., Ex. D at 2, ¶ (a)) (emphasis added) is the very core of what copyright law does *not* protect. Simply put, "[t]he law will not allow an author a monopoly over the unparticularized expression of an idea at such a level of abstraction or generality[.]" *Gund, Inc. v. Smile Int'l., Inc.*, 691 F. Supp. 612, 644 (S.D.N.Y. 1978), *aff'd mem*, 872 F.2d 1021 (2d Cir. 1989). Indeed, "[t]he case law is clear that Defendant's use of a concept or idea – even when narrowed to specific story lines . . . – cannot provide a basis for copyright infringement claims." *Bell*, 2001 U.S. Dist. LEXIS 2783, at *10. *See, e.g., Reyher*, 533 F.2d at 92 (no substantial similarity

between children's book entitled *My Mother Is The Most Beautiful Woman In The World* and children's story entitled *The Most Beautiful Woman In The World* because both consist of unprotectible idea that "to a lost child, the familiar face of the mother is the most beautiful face"); *Cavalier*, 297 F. 3d at 828 ("The themes of teaching children to have confidence, to overcome their fears, and to try are not only too general to be protected but are also standard topics in children's literature"); *Madrid v. Chronicle Books*, 209 F. Supp.2d 1227, 1242 (D. Wy 2002) ("The idea of a mother consoling a child is an un-copyrightable idea, as is the concept of a mother/child relationship."); *CK,* 1994 U.S. Dist. LEXIS 13934, at *25-26 ("Theme of diverse group of children sharing adventures is unprotectible under copyright law").

Similarly, the idea for a page depicting children standing on a globe or map in their national garb is such a commonplace visual device in illustrated children's books as to be cliché[9] and, indeed, is a classic unprotectible *scene a faire* that naturally flows from picture books presenting children from around the world. *Arden*, 908 F. Supp. at 1261 ("Literary devices … cannot be copyrighted"). So too, the appearance of a dove – perhaps *the* most universally recognized symbol of peace – is likewise a common stock illustration in countless children's books and other works as a visual stand-in for peace. Balin Aff., Exs. F, J, K, Q (examples of dove as a symbol of peace); Ex. P (examples of doves in illustrations of children standing around an image of the world); *Reyher*, 533 F.2d at 91 ("expression in more or less stereotyped form" not protectable); *Duffy v. Penguin Books USA Inc.,* 4 F. Supp.2d 268, 273 (S.D.N.Y. 1998) (topics such as accessories, hair and makeup are expected in books on fashion and style and are not protectible). And, of course , these cliché symbols are not original to Lewinson.

Last, even though the specific details and expression in the Katz Book and the registered

---

[9]    *See* representative examples annexed to the Balin Affirmation as Exs. F, I, J, L, O, and P.

Manuscript are entirely different, plaintiff alleges one random and truly tenuous commonality. Specifically, the Manuscript states that "Meanwhile, in China, Tzu-Shuang loves sucking his 'Nye-chewey' while sailing on the Yangtze River, as he listens to ancient Chinese stories from his Grandfather." (Balin Aff., Ex. C at 3). The Katz Book, in stark contrast, has a brightly colored illustration of two chinese children sitting on the ground, reading and writing, with an elderly woman who holds a baby, while behind them is a scene of pastoral tranquility containing four water fowl, a boar, three other children, a pagoda and a placid river with mountains in the background. (*Id.* at Ex. B). From this complex illustration, plaintiff's counsel plucks out as an alleged similarity that the children "are sitting on the bank of a river (perhaps the famous Yangtze River)." (Balin Aff., Ex. D at 2, ¶ (c)(i)). While the unidentified river in the Katz picture may well be the Yangtze, use of iconic symbols of China – whether the Yangtze River or the Great Wall – is a prime example of an unprotectible stock setting – or *scene a faire* – common to many illustrations of China. *See Walker*, 784 F.2d at 50 ("[e]lements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about the work of policemen in the South Bronx. These similarities therefore are unprotectible as *scenes a faire*").[10]

    In short, plaintiff has done nothing more than identify unprotectible ideas and stock

---

[10]  In his pre-motion letter, plaintiff's counsel makes one additional allegation of similarity between the Katz Book and the registered Manuscript that is facially frivolous. Specifically, he contends that the title of the Katz Book – "*Can You Say Peace?*" – is "noticeably similar" to the title of the Manuscript – "*What Do You Call It?*" – based on the rather convoluted theory that the "It" in Lewinson's title could be construed to refer to the final punch line of the Manuscript: "Paci on Earth." (Balin Aff., Ex. D at 3, ¶ (f)). As an initial matter, "[i]t is well-settled in this Circuit that '[a] title cannot be copyrighted.'" *Apollo Theater Found., Inc. v. Western Int'l Syndication*, 2005 U.S. Dist. LEXIS 7955, at *51 (S.D.N.Y. May 5, 2005) (*quoting, in part, Arnstein v. Porter*, 154 F.2d 464, 474 (2d Cir. 1946)). Moreover, as even plaintiff's counsel acknowledges, the "It" in plaintiff's title is obviously "referring to a 'pacifier'" (Balin Aff., Ex. D at 3, ¶ (f)). The two titles are not remotely similar.

literary devices that "are standard … with children's stories, in general. To say that such things may be protected by copyright laws would result in an absurd ruling, [and] would certainly be chilling to the free flow of children's stories." *Madrid*, 209 F. Supp.2d at 1242.

**C.    Lewinson is Unable to Show That the Defendants Have Appropriated His Protected Expression**

Once the Court has discarded those elements of the Manuscript that are not entitled to copyright protection – ideas, *scenes a faire* and unoriginal material – the remaining protected expression, if any, is compared with defendant's work. *Reyher*, 533 F.2d at 91 ("the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization"). In the literary context, works must share substantial similarities in "such aspects as the total concept and feel, theme, characters, plot, sequence, pace and setting." *Williams*, 84 F.3d at 588. In addition, "the Second Circuit has observed that numerous differences tend to undercut substantial similarity." *Adsani v. Miller*, 1996 U.S. Dist. LEXIS 5310 at *7-8 (S.D.N.Y. Apr. 19, 1996) (*citing Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231, 241 (2d Cir. 1983)).

**1.    Characters and Settings**

In contrast to the depth of character development (and hence distinctiveness) that typically occurs in a novel, the characters in Lewinson's Manuscript for a children's picture book are barely developed. He can therefore claim little protection for his characters. *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121-122 (2d Cir. 1930) ("the less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly"). This is especially true because the few traits that do define his characters – that they are children from different countries - - are only unprotectible stock elements. *Walker*, 784 F. 2d at 50 (the "familiar figure of the Irish cop" is a stock theme of

police fiction and not protectible); *Robinson v. Viacom International, Inc.*, 1995 U.S. Dist. LEXIS 9781, at *25-26 (S.D.N.Y. July 13, 1995) (no protection for characters derived from sitcom stereotypes); *CK*, 1994 U.S. Dist. LEXIS 13934, at *15 ("copyright law does not protect basic character types").

The characters in both works are surely happy, upbeat, and engaged in child-like pursuits; but children in picture books are rarely otherwise. *Id.*, at *23 (claimed similarity of optimistic handicapped character is not protectible "[s]ince a children's cartoon used to promote goodwill would be unlikely to incorporate a morose, depressed character who reacts to his handicap with self-pity"). Even a cursory comparison of the two works indicates that – beyond being happy children – the beautifully illustrated characters in the Katz Book share no protectable character traits with those in the Manuscript.

Plaintiff argues that there is a similarity in the nationalities of the children in the two works – that six of the thirteen nations chosen by plaintiff are also featured among the eleven in the Katz Book, specifically America, Japan, Australia, Mexico, China, and Russia. (Balin Aff., Ex. D at 2, ¶ (b)). Yet, the partial overlap in countries represented is an unprotectible stock characteristic that naturally flows from a book discussing children from around the world. Indeed, any two books published in the United States, which highlight a representative cross-section of children from the cultures and nations of the world, are bound to – *and do* – include many of the same countries. *See e.g.* Balin Aff. Ex. M (*Can You Greet the Whole World?*) (depicting children from 12 counties, including six from countries represented in the Manuscript); Ex. I (*Children Around the World*) (children from 12 countries, including five from countries in the Manuscript); Ex. E (*Children Just Like Me*) (children from eight countries in the Manuscript). Virtually all books in this genre feature representative children from many of the

*same* major countries, East and West, including the books' primary market (the United States) and some of the most colorful cultures familiar to children. This standard overlap of nationalities is not a protectible element. *See CK*, 1994 U.S. Dist. LEXIS 13934, at *27 (characters in advertisement are stock and unprotectible because "the presence of a black, a hispanic and a handicapped member in each group is also dictated by the concept of creating a group of children that represent a cross section of young consumers, so that these young consumers can find someone in the group to relate to").

Moreover, review of the *actual* characteristics of the children in the two works further shows a complete absence of substantial similarity. The children in the Katz Book are substantially older than in the Manuscript. *Id.* (difference in age of characters goes to lack of substantial similarity in children's book). None of the children's names in the Manuscript appear in the Katz Book. And in the few instances that Lewinson's Manuscript identifies what children from specific countries are wearing – Mexican girl wears sombrero, Australian boy wears "kubra-brown cowboy hat," Russian boy "dressed like a kossak on a horse," – there is not a single congruity with the Katz Book.

Similarly, to the extent Lewinson identifies in the registered Manuscript what his children are doing, in not a single case are Katz's children from that country doing the same activity. The toddlers in the Manuscript are, in fact, rarely described as doing anything other than sucking a pacifier. In contrast, Katz's characters are engaged in a wealth of activities ranging from preparing food, riding in buses and taxis, swimming in a river, dancing, studying in school, having a snowball fight, writing and reading, painting, playing soccer and skipping. Finally, the single defining characteristic of the characters in the Manuscript – a love of pacifiers – is

completely absent from the Katz Book. [11]

Additionally, aside from an unprotectible overlap of nations, the specific settings for Lewinson's and Katz's characters bear no similarity. Indeed, the comparison is fruitless because in very few cases does Lewinson even identify the settings for his characters beyond their nationality, and even then those settings are so generic as to be beyond copyright protection. Irit from Israel is in her parents' kitchen, Kalala from the Congo is in the desert, Caitlin from Ireland is in bed, Mohammed from Saudi Arabia is in nursery school. *Williams*, 84 F.3d at 589 (shared setting of a dinosaur zoo or adventure park on a remote island is unprotected *scene a faire*); *Robinson*, 1995 U.S. Dist. LEXIS 9781, at * 30 (no protection for stock setting of suburban home or the type of furniture commonly found in 1950s sitcoms); *Arden*, 908 F. Supp. at 1262 (S.D.N.Y. 1995) ("Although both works use restaurant and employment settings, these simply are not a form of expression that can be copyrighted.").

Among Lewinson's characters, only Tzu-shuang from China is more particularly situated – sailing on the famous Yangtze River. Yet, the Yangtze (along with the Great Wall) is one of the most instantly recognizable symbol of China, invoked by authors, artists, and the tourist industry in countless examples over millennia. It would be improper and absurd to afford Lewinson a monopoly on such a famous landmark. *Walker*, 784 F.2d at 50 (no protection for the setting of the 41st Precinct in the South Bronx for a police story because they are "real places known to the public through media reportage").

---

[11] Even if comparison is made between the new material in the Unregistered Derivative Work and the Katz Book, the alleged similarities of character are merely stock and unprotectible or not similar at all. Thus, Lewinson can claim no protection for such banal ideas as a Russian boy playing in the snow, a child riding a bike, or a child playing hide and seek, without similarity of expression. *CK,* 1994 U.S. Dist. LEXIS 13934, at *26 ("Copyright law will not protect characters where 'it is virtually impossible to write a particular . . . fictional theme without employing certain stock or standard literary devices'") (quoting *Hoehling*, 618 F.2d at 979). Balin Aff., Ex. G (illustrations of Russian boy playing in snow).

### 2. Plot; Pace; Sequence

The traditional literary elements of plot, pace and sequence of events have limited applicability to a work as slight as the Manuscript. Again, however, to the extent they exist in the Manuscript, they are either unprotectible literary devices or expressed entirely differently in the Katz Book.

Only on the most generalized level do the two works share an abstract "plot" structure of a series of portraits of children, drawn from different nations to stress their diversity, with a single page in which the children are gathered together to show their commonality. This convention is obviously not original to Lewinson. It is ubiquitous among children's books, where repetition with slight variations frequently takes the place of plot. *See* Balin Aff., Ex. G; (*Wake Up World!*) (portraits of individual children from different countries, with page gathering children's faces on a world map); Ex. I (*Children Around the World*) (portraits of children from different countries, with page featuring all the children standing on the globe); Ex. E (*Children Just Like Me*) (same). Plot on this simple level of literary device is not copyrightable. *Arden,* 908 F. Supp. at 1262 ("The mere use of the literary device of repetition to develop character, plot, or theme does not constitute protected expression"); *Alexander v. Haley*, 460 F. Supp. 40, 45 (S.D.N.Y. 1978) (where "common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement"); *Robinson*, 1995 U.S. Dist. LEXIS 9781, at * 30 (use of a five minute prologue to introduce the central conflict for each episode is a device common to television sitcoms and not protectible). To hold otherwise would give plaintiff a monopoly on an entire genre of children's picture books.

The "pace" of both works is dictated by their young readership, where repetitive format is common to the genre and, therefore, unprotectible. *Id.* (up-tempo pace common to all sitcoms and not protectible); *Williams*, 84 F.3d at 589 (similarity of pace in two dinosaur park adventures

does not create issue of substantial similarity).

Within the limited strictures of the genre, moreover, the plot, pace and sequence of the two works at issue is, in fact, quite different. The Manuscript opens directly into a series of toddlers sucking pacifiers, without explanation or stage-setting. The Katz Book, in contrast, begins with two pages establishing the purpose and theme of the book, to celebrate Peace Day, which will be expressed by children around the world in many different ways. The children in the Manuscript are presented in single-page vignettes, whereas in the Katz Book, each child is shown twice – first in a scene or activity and then on the opposing page in close-up portrait format. The sequence of countries is entirely different in the two works. The next four pages in the Katz Book have no analogue in the Manuscript; four scenes reinforce the theme that children around the world seek peace to lead a healthy, productive and happy life and then, in a single two-page illustration, the reader is invited to say peace with all of the featured children.[12] Finally, even in the almost obligatory final image of children standing on the Earth, there are significant differences in expression. Lewinson's children are described as "sucking their pacifiers" and holding hands on a globe of the Earth, while a dove pulls a banner of national flags around it. In the Katz Book, the children stand on a map near their native country. They do not suck pacifiers. They do not hold hands. There is no ribbon of flags. And, unique to the Katz Book, the text on the page reminds the reader that the International Day of Peace is September 21 and offers the word for peace in another eleven languages.

---

[12]    The Unregistered Derivative Work inserts at this point a page described as follows: "What Do You Call It? (illustrate a picture of a crowd of 'kids faces' from all over the world. In other words, any of these faces could be 'You'!)." Balin Aff., Ex. D. Even if this page had been in the registered version of the Manuscript, which it is not, its concept of anonymous "kids faces," any one of which could be the viewer, is quite different from the careful repetition in the Katz Book of the same eleven individual children from the previous pages reiterating the word for "peace" in their native tongue. Moreover, a roll-call page of children gathered together is a standard and unprotectible stock element of the genre. *See* Balin Aff., Ex. J, H, L, M, N.

### 3.    Themes

Core concepts and themes, as stated above, are not subject to copyright protection whether as abstract ideas or as *scenes a faire* that flow from them.  Thus themes of world peace, unity in diversity, or children saying a "theme-translated word" in a different language are not protectible.  *Madrid,* 209 F. Supp.2d at 1242 (in story about monsters afraid of children, "[t]he innocence of the child, the feeling of excitement or amusement by a person who observes the scene, the tone of the story – all of these ideas are standard and indispensable with these characters, and with children's stories in general.").  Moreover the *expression* of those themes in the Manuscript and Katz Book is entirely different.

The theme of the Manuscript is the common love of toddlers the world over for their pacifier.  Through the pacifier, toddlers find comfort and enjoyment.  It is frequently expressed in affectionate slang – a "dummy" in Australia, a "paci" in America – and serves the same function as a plush toy.  Only on the last page of the Manuscript, as the children sucking their pacifiers hold hands around a globe, is a broader theme of peace on earth jokingly invoked in the play on words "Paci On Earth."

Peace is a much more serious and central theme in the Katz Book.  From the book's opening dedication to the United Nations and the "peacemakers of the future" to its closing sentiment that "people everywhere can find their own way to celebrate peace," the book trumpets its advocacy.  Peace is not the presence of a pacifier, but the absence of violence and fear.  The final invocation of September 21 as the International Day of Peace is aimed not just at young readers but equally to the book's other key audience – concerned adults.

Such thematic differences in a genre of limited options preclude substantial similarity.  *See, e.g., Reyher,* 533 F.2d at 92 (no substantial similarity of theme when "Reyher's book [for children] focuses on how love makes people appear beautiful, while the [defendant's] story

stresses what is beautiful to some may not be beautiful to others."); *CK*, 1994 U.S. Dist. LEXIS 13934, at *12-13 ("While the Curious Kids deal with significant social issues, the Kids Club deals with issues no more weighty than how children can obtain promotional items such as Teenage Mutant Ninja Turtle badges, plastic toy hamburgers, fries or shakes at participating Burger King Restaurants."); *Cavalier,* 297 F. 3d at 825 ("Although also written for children, the mood in the Nicky Moonbeam stories is more serious and instructional.").

### 4.    Total Concept and Feel

As the Second Circuit has noted, "consideration of the total concept and feel of a work, rather than specific inquiry into plot and character development, is especially appropriate in an infringement action involving children's works, because children's works are often less complex than those aimed at an adult audience." *Williams*, 84 F.3d at 589 (citing *Reyher*, 533 F.2d at 91). In other words, because children's books – be they picture books of barnyard animals or depictions of children around the world – by necessity have overlapping stock scenes and themes, consideration of overall concept and feel protects against overly restrictive copyright protection in an inherently limited genre. Thus, "[c]ourts must pay particular attention to summary judgment motions in cases where a plaintiff claims that defendant's work copies the 'total concept and feel' of plaintiff's work" because "[a]ccepting an overly broad scope for protectible 'total concept and feel' threatens the basic principle of copyright law: that concepts and ideas may not be copyrighted, and that only a particular expression of an idea may be copyrighted." *CK*, 1994 U.S. Dist. LEXIS 13934, at *8-9.

Despite the fact that Lewinson and Katz are operating in a very crowded field, the total concept and feel of the Manuscript and the Katz Book are quite different. The theme of peace comes across quite differently in the two works – a concluding joke in the Manuscript, a plea for world peace in the Katz Book. The Katz Book is the latest in a series of books by a veteran

author on themes of social awareness. (*See* Katz Book, Dustflap referring to author's more than twenty prior books with titles such as *The Colors of Us* and *My First Kwanzaa*.) It is tightly constructed, the same characters appearing throughout. It takes its linguistic mission seriously, offering the word for peace in twenty languages both in correct spelling and phonetically. It is richly illustrated with many stylized details of local costume, architecture, customs, flora and fauna.

In contrast, the more modest aims of the Manuscript are reflected in less ambitious research, and a looser conception and structure. *CBS Broadcasting Inc. v. ABC, Inc.*, 2003 U.S. Dist. LEXIS 20258, at * 29 (S.D.N.Y. Jan. 13, 2003) (no similarity of concept and feel where two reality shows have different look and production values). The text of the Manuscript contains some curious choices and outright errors of fact. For example, Lewinson suggests that the image of Kalala from the Congo be illustrated by "lions and giraffes in the desert background," though it is common knowledge that the Congo has no desert. Countries are misspelled ("Sweeden," "Hungry"). Lewinson does not give either the original spelling of the word "pacifier" in each language, nor an anglicized version of it, but only a phonetic approximation of his own invention (Hungarian: Tzumi (Cumi); Swedish: Naap (Napp); Japanese: Oshayaburi (Oshaburi)). In short, the differing educational and entertainment biases of each work are reflected in the care of their preparation and style of presentation. *Debitetto*, 7 F. Supp.2d at 335 (contrasting straightforward manner and third-person style of plaintiff's dog guide with lighthearted tone and first or second person style of defendant's).

This difference in tone – the Manuscript light-hearted and tongue in cheek, the Katz Book serious and educational – is immediately apparent to the ordinary reader and differentiates the two works. *CBS Broadcasting*, 2003 U.S. Dist. LEXIS 20258, at * 26 (no substantial

similarity where the tone of one reality show is much lighter than another); *Williams*, 84 F.3d at

589 (total concept and feel of two stories of dinosaur theme parks different when both are

suspenseful, but the one is primarily a story of human evil and the other an educational adventure

story of the natural world); *Arden*, 908 F. Supp. at 1260 (humor leads to different concept and

feel of two stories based on a repeating day).

*    *    *

In short, the two works are not substantially similar in total concept and feel.  Nor is the

protectible expression in their details, scenes, events or characters even remotely similar.  As a

matter of law, dismissal of this action is plainly warranted.

**CONCLUSION**

Defendants respectfully request that the Court grant their motion to dismiss the

Complaint for failure to state a claim under Rule 12(b)(6) or, in the alternative, for summary

judgment under Rule 56.

Dated: New York, New York
      May 5, 2008

                    Respectfully submitted,

                    DAVIS WRIGHT TREMAINE LLP

                    By:_____
                       Robert Balin (5847)
                       Christopher Robinson (9165)

                       1633 Broadway
                       New York, New York 10019-6708
                       Phone (212) 489-8230
                       Fax (212) 489-8340

                       *Attorneys for Defendants*
                       *Henry Holt and Company, LLC*
                       *and Karen Katz*