UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

ZEV LEWINSON, as Assignee of                :
SWORDPEN.COM, INC.,                          :        07 Civ. 10955 (KMK)
                                             :
                          Plaintiff,         :
                                             :
            - against -                      :
                                             :
HENRY HOLT AND COMPANY, LLC,                 :
KAREN J. KATZ, and JOHN and/or JANE          :
DOES 1-10,                                   :
                                             :
                          Defendants.        :

------------------------------------------------------------ x


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Henry Holt and Company, LLC ("Holt") and Karen Katz submit this reply

memorandum of law in further support of their motion to dismiss the Complaint for failure to

state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for

summary judgment under Rule 56.

## PRELIMINARY STATEMENT

Pending before this Court is defendants' motion to dismiss this copyright infringement

action on the ground that, as a matter of law, the protectible expression in defendant Katz's

illustrated book for children (the "Katz Book") is not "substantially similar" to the protectible

expression in Zev Lewinson's unpublished registered manuscript (the "Registered Manuscript").[1]

*See Boyle v. Stephens, Inc.*, 1998 U.S. Dist. LEXIS 1968 at * 9 (S.D.N.Y. Feb. 25, 1998) ("[i]t is

---

[1] Plaintiff has also alleged substantial similarity between the Katz Book and a later unpublished version of his manuscript which was not registered (the "Unregistered Derivative Work"). As discussed below and in defendants' moving papers, plaintiff is jurisdictionally barred from suing over new material in the Unregistered Derivative Work since he failed to register the Unregistered Derivative Work with the Copyright Office. Additionally, as discussed below, even if this Court were permitted to disregard this

well-established that a court may determine the absence of substantial similarity as a matter of

law"), *aff'd*, 2001 U.S. App. LEXIS 2396 (2d Cir. Dec. 26, 2001); *Hoehling v. Universal City*

*Studios, Inc.*, 618 F.2d 972, 977 (2d Cir.) (dismissal for lack of substantial similarity "permit[s]

courts to put a 'swift end to meritless litigation'"), *cert. denied*, 449 U.S. 841 (1980);

Defendants' Moving Brief ("Def. Br.") at 10-11 and n.8 (citing cases granting pre-answer

dismissal for lack of substantial similarity).

Following the filing of defendants' dismissal motion, Zev Lewinson's counsel withdrew

his appearance and this Court (with defendants' consent) granted Mr. Lewinson's application to

assign the copyright in the Registered Manuscript from his corporate entity – SwordPen.com,

Inc. – to himself so that he may appear pro se in his individual capacity.  On August 18, 2008,

Mr. Lewinson filed an Amended Complaint which – other than substituting Mr. Lewinson as the

named plaintiff in place of SwordPen.com – makes no changes to the infringement claim that is

the subject of defendants' dismissal motion.  Mr. Lewinson has also filed a 16-page letter in

opposition to defendants' dismissal motion, to which defendants now briefly reply.

As a threshold matter, the vast majority of Mr. Lewinson's letter submission is devoted to

an argument that is legally irrelevant to the issue before this Court.  Specifically, Mr. Lewinson

requests discovery to show that defendants had access to his manuscripts.  (Plaintiff's Letter,

dated August 18, 2008 ("Pltf's Letter"), at 1-10).  Yet, as defendants stated in their moving brief

– and as is standard practice on substantial similarity motions – defendants *concede* access to Mr.

Lewinson's works for purposes of this dismissal motion.  *See* Def. Br. at 10; *Walker v Time Life*

*Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986) ("[i]n moving for summary judgment, defendants

concede access to *Walker*'s manuscript, thus narrowing the issues to the similarity between the

---

jurisdictional bar (and it may not), the Katz Book is not substantially similar to the Unregistered
Derivative Work.

two works"), *cert. denied*, 476 U.S. 1159 (1986); *Arden v. Columbia Pictures Industrial, Inc.*, 908 F. Supp. 1248, 1258 (S.D.N.Y. 1995) ("[f]or purposes of this motion defendants concede access to plaintiff's novel.  Thus, the issue presented by this summary judgment motion is whether substantial similarities exist between the Novel and the Film with respect to elements protected under the copyright law").  In short, the question of access is not relevant to this motion.[2]

The *sole* issue before this Court on defendants' motion is whether the Katz Book and Mr. Lewinson's Registered Manuscript are substantially similar – as they must be for plaintiff to state an actionable infringement claim.  *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993, *cert. denied*, 51 U.S. 112 (1994).  This is a *legal* question that courts determine by comparison of the two works at issue – a determination that courts have repeatedly held requires no discovery. *Walker*, 784 F.2d at 51 ("the works themselves … are the real test" for substantial similarity); *Nelson v. Grisham*, 942 F. Supp.  649, 652 (D.D.C. 1997) ("[i]n any case involving substantial similarity, the actual texts [of the works in suit] are the relevant evidence"); *O'Neill v. Dell Publishing Co.*, 630 F.2d 685, 690 (1st Cir. 1980) (no discovery necessary since "[i]t is difficult to understand how additional evidence, whatever it might be, could change the written words of the two [works]").

Additionally, in determining the presence or absence of substantial similarity, the *only* works that may be considered are the Katz Book and the manuscript that Lewinson registered with the Copyright Office.  Def. Br. at 7-9.  Mr. Lewinson nonetheless asks this Court to also consider new material that appears *only* in his Unregistered Derivative Work.  Pltf's Letter at 1-

---

[2]    Defendants in fact vigorously deny that Katz or her editor ever saw the Registered Manuscript, the Unregistered Derivative Work or any other version of Mr. Lewinson's manuscript prior to publication of the Katz Book.  Indeed, Mr. Lewinson's access assertions strain credulity – for example, he admits he has

2. Yet, it is settled law in this circuit and all other circuits that – in determining substantial similarity – a court is jurisdictionally barred from considering material that appears only in an unregistered derivative work and must confine its substantial similarity analysis to expression the plaintiff has copyrighted – here, Lewinson's Registered Manuscript. *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 365 F.3d 112, 115 (2d Cir. 2003); *Novak v. NBC, Inc.*, 716 F. Supp. 745, 780 (S.D.N.Y. 1980); *Walker*, 615 F. Supp. 430, 438 (S.D.N.Y. 1985) ("courts have routinely rejected requests to consider … [unregistered] drafts … in determining substantial similarity"), *aff'd*, 784 F.2d 44 (2d Cir. 1986). Nonetheless, since there is no substantial similarity between the Katz Book and either of Lewinson's manuscripts, the argument below addresses both versions of plaintiff's manuscript (and references to "manuscripts" refer to both).

## ARGUMENT

### THERE IS NO SUBSTANTIAL SIMILARITY BETWEEN
### THE KATZ BOOK AND LEWINSON'S MANUSCRIPTS

Plaintiff's substantial similarity argument boils down to two assertions: that the Katz Book and his manuscripts share a similar "idea" and that there are generic, isolated similarities between the two works. As a matter of law, neither assertion is legally sufficient to establish substantial similarity of protectible expression. *Kregos*, 3 F.3d at 662 (to state infringement claim, plaintiff must show "substantial similarity of protectible material in the two works").

Thus, Lewinson first asserts that his manuscripts are "about children of the world desiring peace" and that "[t]hat '*idea*' was stolen from the Lewinson Manuscript." Pltf's Letter at 4, 3 (emphasis added). *See also id.* at 4 (claiming that defendants took plaintiff's "copyrighted idea"); *id.* at 10 ("[t]he two works are similar in … a wish for world peace"). Notwithstanding its final play on the words "Paci on Earth," Lewinson's manuscripts are not about peace, but the

_____

no memory of ever submitting the Unregistered Derivative Work to Holt. Pltf's Letter at 3. Nonetheless,

universal comfort that children derive from "pacifiers." *See, e.g.,* Pltf's Letter, Ex. G (letter from

Peter Elek and Associates describing the theme of the manuscript as "despite language and

cultural differences, all children share the delight of a pacifier"). Indeed, the descriptions in the

manuscripts for illustrations all refer to a pacifier (*not* peace), and each page of text states the

word for pacifier (*not* peace) in the child's native tongue.

Yet, even crediting Lewinson's tenuous assertion that his manuscripts are about the idea

of "children desiring peace," it is axiomatic that copyright law simply does not protect such

abstract ideas or themes. As Judge Learned Hand so famously put it:

> Upon any work, . . .a great number of patterns of increasing
> generality will fit equally well, as more and more of the incident is
> left out. The last may perhaps be no more than the most general
> statement of what the [work] is about, and at times might consist
> only of its title; but there is a point in this series of abstractions
> where they are no longer protected, since otherwise the [author]
> could prevent the use of his 'ideas,' to which, apart from their
> expression, his property is never extended.

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930), *cert denied*, 282 U.S. 902

(1931). *See also Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) ("[i]t is a principle

fundamental to copyright law that a copyright does not protect an idea"); 17 U.S.C. § 102 (h)

("In no case does copyright protection … extend to an idea"). The ideas Lewinson identifies –

whether they be the universal desire for world peace; or that, despite our diversity, children are

the same in some essential ways; or the idea of children from different cultures dressed in their

native garb speaking the same word in their own languages – exist on a level of abstraction that

is not protectible. Moreover, such universal literary themes are obviously not unique to Mr.

Lewinson. As the many representative books appended to defendants' moving papers illustrate,

such global ideas and sub-themes are common in children's literature and are beyond the

_____

defendants assume access for purposes of this dismissal motion only.

copyright protection and monopoly of any one author. *See* Balin Affirmation, sworn to May 5, 2008, Exs. E-N.

Second, Lewinson points to wholly random similarities between the Katz Book and his manuscripts. But substantial similarity cannot be shown by the selection of random and isolated similarities. *See Williams*, 84 F.3d at 590 ("Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another.").

Further, these supposed similarities are common scenes-a-faire or stock themes that flow from the central, uncopyrightable premise of a parade of children from around the world depicted in their daily activities and environments. Attending school, riding a bicycle, playing tag or hide and seek with friends, enjoying the snow or napping are typical childhood activities that are all but unavoidable in a children's book of this type and hence are archetypal scenes-a-faire over which Lewinson can claim no monopoly. *Walker,* 784 F.2d at 50 (copyright protection does not extend to "stock themes commonly linked to a particular genre"). Similarly, as the representative books annexed to the moving papers show, a roll-call of children's faces is a commonplace literary device frequently used in children's books of this structure where the diversity of individuals is then counterbalanced by their commonality (*see* Balin Aff., Exs. E, G, I); and the visual image of children from around the world gathering around a globe or map as a symbol of unity and peace is so ubiquitous in books and mass culture that it has become cliché. *Id* at Exs. F, I, J, L, O, and P. *Well-Made Toy Mfg.*, 210 F. Supp.2d at 16 ("elements which are not original are unprotectible").

In short, plaintiff has failed to identify any similarity (let alone, substantial similarity) of *protectible* expression. *Williams*, 8 F.3d at 588 (courts "must take care to inquire only whether the 'protectible elements, standing alone, are substantially similar'").

Additionally, as set forth in defendants' moving brief, not only does Lewinson fail to show substantial similarity of protectible expression as to either manuscript, but most of the material he proffers appears only in his Unregistered Derivative Work – and must therefore be excluded from the substantial similarity analysis for this reason as well. Specifically, Lewinson refers to his Russian boy playing in the snow, to his Japanese child riding a tricycle, to his Swedish boy dreaming of playing hide and seek, and to the roll call of children's faces. Yet, none of these stock elements from the Unregistered Derivative Work appear anywhere in Lewinson's Registered Manuscript – which is the only work on which Lewinson may bring suit. *Well-Made Toy*, 354 F.2d at 115 (in conducting substantial similarity analysis, district court required to disregard all changes to copyrighted doll made in later unregistered derivative work). Once these elements from the Unregistered Derivative Work are properly excluded, Lewinson has very little else to offer.

Lewinson complains that five of the 13 "countries" represented in the Registered Manuscript appear also among the 11 countries in the Katz Book. Pltf's Letter at 9. Yet the mere overlap of countries in books about children from around the world is a patently unprotectible element that is common – indeed, inevitable – in this genre of children's literature. *See, e.g.* Balin Aff., Ex M (children's book depicting children from 12 countries, including six from countries represented in Registered Manuscript); Ex J (depicting children from 12 countries, including five from countries in Registered Manuscript); Ex E (children from eight countries in the Registered Manuscript). Moreover, as discussed in our moving papers, the

11825752                                    7

overlapping countries are exactly those one would expect to see in a book featuring a representative selection of children from around the world – countries such as the United States, Australia, China, and Japan.

Finally, Lewinson ties himself in knots in a misguided effort to show a similarity in the titles of the two works. Other than the fact that both titles are questions, there is no similarity in expression at all between "*Can you Say Peace?*" and "*What Do You Call It?*," especially when the "It" in Lewinson's title refers to a pacifier. Moreover, "[i]t is well-settled in this Circuit that '[a] title cannot be copyrighted.'" *Apollo Theater Found., Inc. v. Western Int'l Syndication*, 2005 U.S. Dist. LEXIS 7955, at *51 (S.D.N.Y. May 5, 2005) (*quoting, in part, Arnstein v. Porter*, 154 F.2d 464, 474 (2d Cir. 1946)).

## CONCLUSION

Plaintiff does not – and cannot – show any meaningful similarities between the two works, let alone the required substantial similarity of protectible elements. Because Lewinson's infringement claim "'concerns only noncopyrightable elements of plaintiff's work,'" dismissal of this action is mandated. *Williams,* 84 F.3d at 588 (*quoting Walker*, 784 F.2d at 481). Defendants therefore respectfully request that the Court end this meritless suit and grant their motion to

dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) or, in the

alternative, for summary judgment under Rule 56.


Dated: New York, New York
   September 19, 2008

                Respectfully submitted,

                DAVIS WRIGHT TREMAINE LLP

                By: _____

                Robert Balin (5847)
                Christopher Robinson (9165)

                1633 Broadway
                New York, New York 10019-6708
                Phone (212) 489-8230
                Fax (212) 489-8340

                *Attorneys for Defendants*
                *Henry Holt and Company, LLC*
                *and Karen Katz*